IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DENNIS HALL, MARY GLANTON, | ) | |
| SAMUEL JACKSON, VICKY ALLEN | ) | |
| BROWN, AND FREDDIE B. RUSSAW, | ) | |
| individually, and on behalf of all persons | ) | |
| similarly situated, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 1:11cv894-WHA |
| | ) | |
| DOUGLAS A. VALESKA, and JOHN | ) | |
| DOES 1-10, | ) | (wo) |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. FACTS AND PROCEDURAL HISTORY**

This cause is before the court on a Motion to Dismiss (Doc. #13), filed by Defendant

Douglas A. Valeska.

The Plaintiffs are Dennis Hall, Mary Glanton, Samuel Jackson, Vicky Allen Brown, and

Freddie B. Russaw.  The Plaintiffs are African-American residents of Henry or Houston

Counties who have been called for jury service and who have been excluded from service

through the use of peremptory strikes.  They seek to represent themselves individually and a

class of similarly-situated persons in obtaining a declaratory judgment and injunctive relief.

They claim that African-Americans are given only token representation as jurors in serious

felony cases, principally capital cases, in Houston and Henry Counties.

Defendant Valeska ("Valeska") is the District Attorney of Houston and Henry Counties,

Alabama.  The Plaintiffs have also named John Does defendants 1-10, who are the Assistant

District Attorneys who work under the direction and supervision of Valeska.  All of the

Defendants are named only in their official capacities.

The Plaintiffs bring a section 1983 equal protection claim based on an alleged practice of discrimination in peremptory challenges (Count One), a violation of 18 U.S.C. § 243 (Count Two), a violation of the state constitution (Count Three), a violation of state law (Count Four), and a claim for attorneys' fees and costs (Count Five).

Valeska has moved to dismiss the Complaint.[1]   Upon review of the briefs in support of and in opposition to the Motion to Dismiss, the court set the case for oral argument, and subsequently directed the parties to discuss the applicability of *O'Shea v. Littleton*, 414 U.S. 488 (1974) and *Luckey v. Miller*, 976 F.2d 673 (11th Cir. 1992) to this case.  (Doc. #23).

Upon consideration of the briefs and oral argument, and for reasons to be discussed, the Motion to Dismiss is due to be GRANTED.

## II.   MOTION TO DISMISS

The court accepts the plaintiff's factual allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).   In analyzing the sufficiency of pleading, the court is guided by a two-prong approach: one, the court is not bound to accept conclusory statements of the elements of a cause of action and, two, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief.  *See  Ashcroft v. Iqbal,* _ U.S. _,  129 S.Ct. 1937, 1949-50 (2009).   That is, in reviewing a Complaint, the court must (1) eliminate any allegations in the complaint that are

_____

[1] The court will consider the Motion to Dismiss filed only by Defendant Valeska as applicable to claims against others who might be more specifically named in the future.

2

merely legal conclusions; and (2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).   "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  *Id.*  (citation omitted).   To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but instead the complaint must contain "only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.   The factual allegations  "must be enough to raise a right to relief above the speculative level."  *Id.* at 555.

## III.  FACTS

The facts alleged in the Complaint are as follows:

The Plaintiffs are African-American residents of Henry or Houston Counties who have been called for jury service and who have been excluded from service through the use of peremptory strikes.  The Plaintiffs state that in reported decisions by Alabama state courts, and one federal district court, there have been findings of *Batson*[2] violations in strikes of four of the Plaintiffs.  The last of these reported decisions is dated 1998.  As to the one Plaintiff for whom the Complaint alleges no reported case of a *Batson* violation, the Plaintiffs state that that individual Plaintiff was called for jury service in 2004, and all African-American venire

---

[2] *Batson v. Kentucky*, 476 U.S. 79 (1986) (holding that a prosecutor's peremptory challenge based solely on the race of a potential juror constitutes a violation of the constitutional rights of the defendant and the challenged juror, and establishing a procedure for the trial court to use during jury selection for resolving objections to a prosecutor's use of peremptory challenges on that basis.)

members were stricken.  (Complaint at ¶¶ 11-20).  The Plaintiffs allege that although African-Americans constituted 23.3% of Houston County's population in 2008, and 29.3% of Henry County's population in 2008, only 5% of the jurors who served in cases in which the death penalty was imposed from 2006-2010 were African-American.  *Id.* at ¶¶ 63, 64, 67.  The Plaintiffs state that from 2006 to 2010, Defendant Valeska and the John Doe Defendants used peremptory strikes in cases prosecuted by them in which the death penalty was imposed to remove 82% of the eligible African-Americans qualified for jury service.

The Plaintiffs allege that "Defendants Valeska and John Does 1-10 have engaged in a pervasive and continuing practice of utilizing peremptory challenges to exclude African-Americans from jury service altogether or, at a minimum, to greatly reduce and minimize their representation on juries on serious felony cases, principally involving capital offenses, in Houston and Henry Counties."  *Id.* at ¶ 46.

The Plaintiffs identify several practices allegedly used by the Defendants to discriminate against African-American venire members, including targeting African-Americans in questioning and eliciting responses used as race-neutral explanations for challenges, failing to follow up on answers to determine whether a juror would be impaired in impartiality, disparate questioning of African-American and white jurors, allowing similarly situated white jurors to serve, and providing false reasons for challenges that are later contradicted by the record or factual investigation.  *Id.* at ¶ 58.

The Plaintiffs seek a declaration that these practices violate the constitution, a federal statute, and state laws outlined in the counts.  The Plaintiffs seek a permanent injunction against "the Defendants, their officers, agents, employees, and successors in office, as well as those

4

acting in concert and participating with them," from engaging in the practices outlined.  *Id.* at

p.17, ¶ (D).  The Plaintiffs also seek the appointment by this court of a monitor to ensure that the

Defendants comply with record collections requirements for four years.  The data which

Plaintiffs would require to be collected includes the racial make up of jury pools in each serious

felony case in Houston and Henry Counties; the races of jurors stricken for cause and through

peremptory challenges in each serious felony case;  the names of all cases in which *Batson*

violations are alleged; and the identity of the attorneys involved in each case in which a *Batson*

violation is alleged in Houston and Henry Counties.  The Plaintiffs also ask the court to order

that the Plaintiffs have meaningful access to and monitoring of jury selection with notice of

empaneling of juries and opportunity "for oversight and intervention if Defendants'

discrimination continues;" and request that this court retain jurisdiction until the order is fully

implemented.  *Id.* at p. 17, ¶ (D).

## IV.  DISCUSSION

Defendant Valeska has moved to dismiss the Complaint on various grounds.  The

Plaintiffs urge the court not to dismiss the Complaint, but to allow the case to proceed to

discovery.  The court will begin with the asserted grounds for dismissal as to federal claims, and

then the state law claims.

### A.  Federal Claims

As stated above, the Plaintiffs bring federal claims for violation of equal protection, for

violation of 18 U.S.C. § 243, and for attorneys' fees.  Defendant Valeska challenges the

Plaintiffs' federal claims stating that the Plaintiffs have failed to state a claim for which

prospective injunctive or declaratory relief may be granted, or for violation of 18 U.S.C. § 243.[3]

1. Equal Protection Claim

To establish a right to injunctive relief the plaintiff must show (1) the violation of a right, (2) there is a serious risk of continuing irreparable injury if relief is not granted, and (3) there is no adequate remedy at law. *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000).

That African-Americans have a constitutional right not to be excluded from service on a jury through the use of peremptory strikes based solely on their race has been well-settled since the Supreme Court rendered its opinion in *Batson*. In *Powers v. Ohio*, 499 U.S. 400, 416 (1991), the Supreme Court held that a defendant in a criminal case can raise equal protection claims on behalf of jurors excluded on the basis of race even if the defendant and the juror do not share the same race. In reaching that conclusion, the Court explained that individual jurors subjected to exclusion solely on the basis of race have the legal right to bring suit on their own behalf, but that those challenges are rare. *Id.* at 414. The Court noted that excluded jurors cannot "easily obtain declaratory or injunctive relief when discrimination occurs through an individual prosecutor's exercise of peremptory challenges." *Id.* The Court reasoned that, unlike a case of a systemic practice of excluding all African-Americans from juror rolls, as had previously been addressed by the Court, it is "difficult for an individual juror to show a likelihood that discrimination against him at the *voir dire* stage will recur." *Id.* at 415 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)).

In the instant case, the Plaintiffs, individually, and on behalf of all persons similarly

---

[3] The Defendant has asserted other bases for dismissal as well, including statute of limitation, res judicata, immunity, and other grounds.

situated, have attempted to avoid the concerns with equitable relief identified in *Powers,* and to demonstrate a serious risk of continuing irreparable injury, by alleging that Defendant Valeska and the John Doe defendants "have engaged in a pervasive and continuing practice of utilizing peremptory challenges to exclude African-Americans from jury service altogether, or, at a minimum, to greatly reduce and minimize their representation on juries in serious felony cases, principally involving capital offenses, in Houston and Henry Counties." (Complaint at ¶ 46). The Plaintiffs have identified cases in Houston and Henry Counties in which *Batson* violations were found by courts in 1991, 1992, 1993, 1994, 1996, and 1998.  There is no factual allegation of a judicial finding of *Batson* violations after 1998.  One Plaintiff alleges that he was excluded from jury service in 2004.  The Plaintiffs have also alleged that they are willing to serve on a jury in the future.  Finally, the Plaintiffs allege that from 2006-2010, 82% of African-Americans were stricken from felony cases in which the death penalty was imposed in Henry and Houston Counties.

The Defendant contends that there is no serious risk of continuing irreparable injury because the allegations of pattern and practice identified in the Complaint occurred between 1991 and 1998.  The Defendant says there are no factual allegations of ongoing practices.

The court agrees that the Plaintiffs' conclusory allegation that Defendant Valeska and the John Doe defendants "have engaged in a pervasive and continuing practice" is insufficient.  *See Moss v. U.S. Secret Service*, 750 F. Supp. 2d 1197, 1212-13 (D. Or. 2010) (applying *Iqbal* and *Twombly* in a case with requested declaratory and injunctive relief); *Dukes v. Pappas,* No. 09-3869, 2010 WL 571779, at *6 (E.D. Pa. Feb. 17, 2010) (stating that allegations that defendants have a continuing practice of discrimination do not "contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.' ").

Aside from the absence of allegations of fact, however, and of greater significance in this case, is that the Plaintiffs have not stated "an adequate basis for equitable relief" under *O'Shea v. Littleton*, 414 U.S. 488, 499 (1974).  In *O'Shea*, black and white residents of a town brought a class action and claimed that the county magistrate and judge set bond without regard to the facts of the case, set sentences higher for members of the plaintiffs' class, and required jury fees if the plaintiffs could not pay fines.  The plaintiffs sought an injunction to control or prevent those events from occurring in the course of future criminal trials.  *Id.* at 500.   On appeal, the Court of Appeals suggested that an injunction might be appropriate, and suggested that it might be appropriate to require periodic reports of aggregate data on actions on bail and sentencing.  *Id.* at 493 & n.1.  The Supreme Court reversed the Court of Appeals.  *Id.* at 493.  The Court first determined that there was no case or controversy presented, but then explained that, even if there were a case or controversy, "an adequate basis for equitable relief" had not been stated.  *Id.* at 499.

Much of the Court's reasoning in *O'Shea* relevant to the nature of the relief sought there also applies to the relief sought in the instant case.  The Court in *O'Shea* noted that the plaintiffs did not seek to enjoin criminal prosecutions, but only specific events which might occur during criminal trials in the future.  *Id.* at 500.  The Court explained that the proper balance between federal and state courts requires "restraint against the issuance of injunctions against state officers engaged in the administration of the State's criminal laws absent a showing of irreparable injury which is 'both great and immediate.'"  *Id.* at 499 (citations omitted).   The Court explained that even though the plaintiffs did not seek to enjoin criminal prosecutions, an

order by the federal court would contemplate interruption of state proceedings to adjudicate assertions of noncompliance.  *Id.* at 500.   The Court explained that such interruption would be an "ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference *Younger v. Harris,* [401 U.S. 37 (1971)][4] . . . sought to prevent."  *Id.*   The Court reasoned that the injunction "would require for its enforcement the continuous supervision by the federal court" of criminal proceedings involving any members of the class. *Id.* at 500-01. The Court further reasoned that, although there was no express requirement in the suggested injunctive relief that the district court supervise the state courts on a day-to-day basis,  "'periodic reporting' would constitute a form of monitoring of the operation of state court functions that is antipathetic to established principles of comity."  *Id.* at 501.   The Court also concluded that because an injunction would necessarily allow the beneficiaries of the injunction in the class to have their claims of noncompliance adjudicated in federal court, principles of equitable restraint would be violated.  *Id.*   Finally, the court explained that the plaintiffs had failed to show either the likelihood of substantial and immediate irreparable injury, or that there was an inadequacy of remedy at law, because they could seek substitution of a judge, change of venue, appeal, or habeas relief.  *Id.* at 502.   The Court also noted that a criminal statute, 18 U.S.C. § 242, provides a federal law deterrent even in the absence of an injunction.  *Id.* at 503.

In the instant case, the Plaintiffs seek a declaration and injunction which fall within the reasoning of *O'Shea.  See Old Republic Union Ins. Co. v. Tillis Trucking Co., Inc.,* 124 F.3d

---

[4] Although the Court relied on the considerations in *Younger*, the Court in *O'Shea* did not apply abstention analytical factors, only the equitable relief requirements in its analysis. *See Pompey v. Boward County*, 95 F.3d 1543 (11th Cir. 1996) (characterizing *O'Shea* as an expansion of *Younger*).

1258, 1261 (11th Cir. 1997) (stating that the principles of *Younger* applied to declaratory judgment that would effectively enjoin state proceedings).  The Plaintiffs ask that the court order "that Plaintiffs shall have meaningful access to and monitoring of jury selection in serious felony cases with notice of the empaneling of juries in such cases and an opportunity for oversight and intervention if Defendants' discrimination continues."  (Complaint at p.18 (¶ I)).   Although the Plaintiffs, like those in *O'Shea*, state that they do not seek to enjoin any current or future criminal proceedings, the requested "intervention," which allows beneficiaries of the injunction to interfere with state criminal proceedings if there is discrimination in jury selection, is like the prohibited injunctive relief in *O'Shea*.  *See Pompey v. Broward County*, 95 F.3d 1543, 1549 (11th Cir. 1996) (taking into account the probability that if the injunction sought were issued, any person who was the beneficiary of the injunction "could and probably would seek relief in the federal district court on grounds that the state judge had violated the federal injunction."). The practices that the Plaintiffs seek to enjoin, such as disparate questioning of African-American venire members during *voir dire*, are practices which occur during the course of the criminal trial, and which could be raised there by the criminal defendant as a *Batson* challenge. The relief sought by the Plaintiffs could also allow any member of the class subjected to a peremptory strike to promptly seek a contempt citation in federal court, so that resort to the federal courts by beneficiaries of the injunction to enforce the injunction would interrupt that process.  *See* Alschuler, *The Supreme Court and the Jury: Voir Dire, Peremptory Challenges, and the Review of Jury Verdicts*, 56 U.Chi. L. Rev. 153, 194 (1989) (stating that once a jury has been empaneled, the violation of a juror's rights is complete, and "it would be too late to secure a place on the jury through injunction or mandamus.") (article cited favorably in *Powers v. Ohio*,

499 U.S. 400 (1991)).  While at the oral argument held in this case counsel for the Plaintiffs stated that it was the Plaintiffs' prediction that an injunction by this court would be followed, under *O'Shea* this court must consider "hypothesized recalcitrance," and must "focus on the likely result of an attempt to enforce an order of the nature sought here."  *Luckey v. Miller*, 976 F.2d 673, 679 (11th Cir. 1992).

The Plaintiffs also ask this court to order that the Defendants collect and maintain records and dates for four years regarding (1) the jury pool in serious felony cases in Houston and Henry Counties, (2) the race of individual jurors stricken for cause and through peremptory challenges, (3) the names of all cases in which *Batson* violations are alleged, and (4) the attorneys involved in cases where a *Batson* challenge is alleged (Complaint at p. 18 ¶ (E); to appoint a federal monitor for four years to ensure that the Defendants comply with these record collection requirements (*Id.* at (F); require that the Defendants file a written report with the federal monitor every six months (*Id.* at G); to provide Plaintiffs' attorneys with access to the record collections for four years; and to retain jurisdiction of this case for four years to ensure enforcement.  As noted above, in *O'Shea*, the Court equated data reporting requirements to a form of monitoring that violates principles of comity.  *O'Shea*, 414 U.S. at 501.

Finally, in addition to beneficiaries of the injunction having their claims of noncompliance adjudicated in federal court, the relief requested by the Plaintiffs would allow for beneficiaries of the injunction to seek federal review of state court rulings.  *See* (Complaint at p. 18, ¶ (E) (3) (including in reporting requirement the cases in which *Batson* challenges were brought); *id.* at p.17, ¶ (D) (injunction would be against the Defendants in this case, "as well as those acting in concert and participating with them . . . ."))  Relying on the language of the

requested relief, a beneficiary of the injunction could well seek to enforce a federal injunction against a state judge denying a *Batson* challenge in a criminal case, which would separately implicate the concerns which underlie *O'Shea*.  *See, e.g., Pompey v. Broward County*, 95 F.3d 1543 (11th Cir. 1996) (applying *O'Shea* in a case seeking injunction against state court judges). A ruling by this court, even after the completion of the criminal case, which was contrary to the state court judge's ruling on a *Batson* challenge could also have implications for the state court criminal conviction.

The Plaintiffs have argued that *Younger v. Harris*, relied on in *O'Shea*, is not intended to apply in this type of case, citing *Wexler v. Lepore*, 385 F.3d 1336 (11th Cir. 2004).[5]  *Wexler*, however, acknowledged that federal courts should not order relief which would "result in meticulous and burdensome oversight of state court or court-like functions."  *Id.* at 1340.  In citing examples of such impermissible oversight, the Eleventh Circuit cited *O'Shea*. *Id.*   The Eleventh Circuit also cited to  *Luckey v. Miller*, 976 F.2d 673 (11th Cir. 1992), in which the court adopted a district court's dismissal of a case on the basis of *Younger* abstention.  *Wexler*, 385 F.3d at 1340.   In *Luckey*, the plaintiffs sought injunctive relief against the Governor of Georgia and Georgia judges.  In that case, similar to the instant case, the plaintiffs argued that they merely wanted a reporting requirement, and that the onus to comply would be on the state executive rather than the judiciary, but the court found abstention to be appropriate.  *Luckey*, 976 F.2d at  677, 678.   The Eleventh Circuit in *Wexler* also cited to *31 Foster Children v. Bush*, 329

---

[5] While the *Wexler* court stated that *Younger* does not apply to judicial review of executive actions, in so-stating, the court cited to *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989), in which the Court addressed whether *Younger* applies to a council's proceedings, which are ultimately subject to state court judicial review.  *Id.* at 369-70.  That case is, therefore, distinguishable.

F.3d 1255, 1279 n.11 (11th Cir. 2003), as a case "addressing relief that would take 'responsibility for a state's child dependency proceedings away from state courts and [put] it under federal court control.'" *Wexler*, 385 F.3d at 1340.

The Eleventh Circuit has also cited with approval a decision of the Seventh Circuit involving an injunction against judges and the chief of police. *See Pompey v. Broward County*, 95 F.3d 1543, 1548 (11th Cir. 1996) (*citing Hoover v. Wagner*, 47 F.3d 845, 852 (7th Cir. 1995)). In *Hoover*, the Seventh Circuit stated that *Younger* did not squarely apply because none of the plaintiffs in the case were being prosecuted for anything. *Hoover*, 47 F.3d at 848. The court held, however, that "it would be an abuse of discretion in light of the principles of equity and comity that underlie *Younger*," to grant injunctive relief against state judge and the city's chief of police. *Id.* at 851.

The court finds, therefore, that the reasoning of *O'Shea* applies in this case, that the application of *O'Shea* is consistent with Eleventh Circuit precedent, and that the Plaintiffs have failed to state an appropriate basis for injunctive or declaratory relief. Accordingly, Count One of the Complaint is due to be dismissed.

### 2.  18 U.S.C. § 243

The Plaintiffs also bring a claim for violation of 18 U.S.C. § 243.[6]  The Defendant contends that this count fails to state a claim for relief because the statute provides for imposition

---

[6] 18 U.S.C. § 243 provides as follows:
No citizen possessing all other qualifications which are or may be prescribed by law shall be disqualified for service as grand or petit juror in any court of the United States, or of any State on account of race, color, or previous condition of servitude; and whoever, being an officer or other person charged with any duty in the selection or summoning of jurors, excludes or fails to summon any citizen for such cause, shall be fined not more than $5,000.

of a $5,000 criminal fine, but not a private right of action.

The Plaintiffs cite *Ramseur v. Beyer*, 983 F.2d 1215, 1244 n.6 (3d Cir. 1992) (Alito, J., concurring), for the proposition that three Supreme Court Justices in *Peters v. Kiff,* 407 U.S. 493 (1972)*,* thought that § 243 could be asserted in a civil suit.  The concurrence in *Ramseur* noted, however, that while the Supreme Court has discussed § 243, "it is unclear that the Court has ever held that a criminal defendant can assert rights under the statute as opposed to the Equal Protection Clause itself."  *Ramseur*, 983 F.2d at 1244 n.6.   The Plaintiffs do not cite a case in which a court has held that private parties may bring a claim pursuant to § 243.

In this case, the Defendant cites to *Quadra v. Superior Court of City and County of San Francisco*, 378 F. Supp. 605, 609 (D.C. Cal. 1974), for the proposition that § 243 does not provide a private right of action.  *Quadra* is not the only case to reach this conclusion.  *See Voigt v. Muffenbier*, No. Civ. 1:11-cv-89-JLV, 2012 WL 90486, at *2 (D.N.D. Jan. 11, 2012); *U.S. ex rel. Vampire Nation v. Citifinancial Mortg. Co., Inc.*, Civil Action No. 06-936, 2007 WL 2142404, at *5 (W.D. Pa. July 09, 2007); *Quarles v. State of Tex.*, 312 F. Supp. 835, 837 (D.C. Tex. 1970).  The United States Attorney could seek criminal penalties against the Defendants pursuant to the statute.   Thus, the criminal penalty in § 243 is a legal deterrent to the proscribed conduct, *see O'Shea*, 414 U.S. at 503, and this court is persuaded to follow those cases which have concluded that § 243 is only a criminal statute, and does not provide a private right of action.  Accordingly, Count II of the Complaint is due to be dismissed.[7]

---

[7]   The claim for attorneys' fees and costs pursuant to 42 U.S.C. § 1988 in Count V is also due to be dismissed. Having concluded that the federal claims in the Complaint are due to be dismissed for the reasons discussed above, the court need not address other grounds for dismissal asserted by the Defendant.

B.  State Law Claims

The Defendant asserts various defenses to the state law claims, including that there is no basis for jurisdiction because there are no valid federal claims pursuant to which to exercise supplemental jurisdiction, and that state, sovereign, prosecutorial, and discretionary function immunity, as well as other defenses raised in connection with the federal claims, warrant dismissal.

Having concluded that the federal claims are due to be dismissed, the court agrees that it is appropriate to decline to exercise supplemental jurisdiction over the state law claims, and that those claims are due to be dismissed without prejudice pursuant to 28 U.S.C. § 1367 (c)(3).  The Plaintiffs are free to assert these claims in state court, if they choose to do so.

## IV.  CONCLUSION

For the reasons discussed, it is hereby ORDERED, that the Motion to Dismiss (Doc. #13) is GRANTED as follows:

1.  The federal claims in Counts One, Two and Five are dismissed.

2.  The state law claims in Counts Three and Four are dismissed without prejudice pursuant to 28 U.S.C. § 1367 (c)(3).

3.  Final judgment will be entered accordingly.

Done this 28th day of March, 2012.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE